IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INGRID GREEN,** | : | Civil No. 3:21-CV-01462 |
| **Plaintiff,** | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **SANOFI PASTEUR INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

I.  **Factual Background**

The plaintiff, Ingrid Green, presents this *pro se* complaint alleging that she was sexually harassed and subjected to a hostile work environment during her time working at Sanofi Pasteur Inc. ("Sanofi") in 2015. While this complaint is not a model of clarity, liberally construed, Ms. Green's complaint alleges that she was physically and sexually assaulted, bullied, and subjected to physical and verbal misconduct, leading to a decline in her mental health. She is requesting $100,000 in damages for pain and suffering and requests the alleged harassers be fired from Sanofi.

According to Ms. Green's complaint, she was hired by the staffing agency ManPower to work for Sanofi in April 2015. (Doc. 1, at 3). She alleges that the harassment began when she was taunted for being hard of hearing during her

1

training, despite her informing both ManPower and Sanofi that she wore hearing aids. (Id.) She then details alleged incidents of physical assault by a fellow employee Demitri, sexual harassment by two other employees, Robert and Chad, and a pattern of sexual harassment and assault by her supervisor, Evans. (Id., at 3-6). Her complaint alleges that she was placed at a worksite primarily with men. (Doc. 1, at 3). One of her coworkers, Demetri, was critical of her performance, and after she stood up to him, he pushed her knee into a pipe with a chair. (Id.) She reported the incident to her supervisor, Evans, who spoke to Demetri about the incident. (Id.) Demetri quit shortly thereafter. (Id.)

Another employee, Chad, continually made comments to Green about wanting to go out with her even after she repeatedly told him she was not interested. (Id.) After her rejections, Green alleges he continually bullied her, kicked her, and physically threatened her. (Id., at 4).According to the complaint yet another employee, Robert, made unwanted, explicitly sexual comments to Green, including that he could "use his fingers to satisfy [her]" and that he could "get [her] in bed." (Doc. 1, at 4). Green also alleges that Robert touched her breast without her consent, and after she condemned him for touching her, became physically abusive to her, including pushing her in the back and grabbing her by the arm on two separate subsequent occasions. (Id.) Again, she reported these incidents to her supervisor, Evans, who spoke with Robert. (Id.)

Despite Green reporting the incidents of harassment to her supervisor, it is alleged in her complaint that her supervisor, Evans, also behaved inappropriately toward her. Green's complaint details ongoing alleged conduct including Evans repeatedly touching her arms and legs, staring at her up and down, saying "what he could do for [her]" while touching her back, touching her breast, asking to massage her, putting his arms around her waist, and tickling her. (Doc. 1, at 4-5). She alleges that she repeatedly told him to stop but was ignored. (Id., at 5) She further avers that Evans asked if they could meet up at a hotel and, after she rejected him again, he became angry and treated her disrespectfully at work. (Id.)

Green also recounts a series of other alleged incidents from her time at Sanofi, appearing to allege that she was intentionally exposed to a toxic mix of cleaning chemicals by another employee, Lottie, causing her to faint, that her glasses were hidden in a locker and damaged by heat, and that other men from different departments sat directly in front of her and "talk[ed] about sucking penis." (Doc. 1, at 6). The circumstances of her employment ending at Sanofi are unclear from her complaint, though it appears that either she was laid off, or her temporary position simply ended.

According to Sanofi, on June 16, 2016, Green filed a complaint alleging she was sexually harassed in July, August and September of 2015 with the Pennsylvania Human Rights Commission ("PHRC") and the United States Equal Employment

3

Opportunity Commission ("EEOC"). (Doc. 13-1). The PHRC dismissed the charges on August 16, 2019, (Doc. 13-2) and on November 13, 2019 the EEOC adopted the PHRC's determination and issued a Dismissal and Notice of Rights. (Doc. 13-3).

The plaintiff filed the instant *pro se* complaint on August 25, 2021. Liberally construed, her complaint alleges a cause of action for sexual harassment and hostile work environment under Title VII. The defendant filed this motion to dismiss on October 22, 2021. (Doc. 12). In this motion, the defendant seeks dismissal of Green's complaint on two grounds. First, Sanofi argues that the complaint fails to comply with Rule 8's requirement that, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, according to Sanofi this complaint is time-barred since it was filed well beyond the 90-day limitations period prescribed by Title VII. For her part, Green has responded to this statute of limitations issue, albeit in a somewhat enigmatic fashion, by tendering a document which purports to be a July 21, 2021 EEOC dismissal and notice of rights form. (Doc. 18-1). Green asserts that this was the notice she received from the EEOC regarding the resolution of her complaint with that agency. Given the date on the form tendered by Green—July 21, 2021—her complaint would be timely filed within the 90-day limitations period set by statute. Sanofi, in turn, raises a host of questions regarding the provenance and legal

effect of this notice tendered by Green, questions which cannot be answered on the spare factual record before us.

This motion to dismiss has been fully briefed and is ripe for resolution. (Docs. 13, 16, 17, 18). As discussed below, the parties' submission of two different EEOC dismissal and notice of rights forms, each of which purports to be the genuine form in this case, raises a series of questions regarding the application of the statute of limitations to this lawsuit. After consideration, and for the following reasons, we find that there exists a question as to when the plaintiff received the Dismissal and Notice of Rights from the EEOC, beginning the statute of limitations. Accordingly, we will recommend that the instant motion to dismiss be denied, but will direct that the parties engage in focused discovery on this issue, and then present this question, if appropriate, on a more fulsome record through a motion for summary judgment.

**II.    Discussion**

    **A. Motion to Dismiss – Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third

5

Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

7

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

8

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

9

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Two other considerations guide us in addressing this particular motion to dismiss, where we are asked consider a complaint whose claims are occasionally unclear and where the gravamen of the claims, as alleged in the complaint differs from the assertions made by the plaintiff in her reply to the defendants' motion to dismiss. First, it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

In addition, when a plaintiff's complaint is less than clear, the Court may, *sua sponte*, order the plaintiff to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the claims the plaintiff asserts against the defendants. See, e.g., Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL

3651369, at *1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No. 1:05–CV–1371, 2006 WL 3254535, at *7 (M.D. Pa. Nov. 9, 2006); see also Moore's Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential usefulness ... courts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do"); Fikes v. City of Daphne, 79 F.3d 1079, 1082–83 (11th Cir. 1996) (finding that a more definite statement can tighten a complaint and clarify which of several possible claims are being asserted).

## B. The Motion to Dismiss Plaintiff's Complaint Should Be Denied.

At the outset, we note that in its motion to dismiss Sanofi contends that Green's complaint fails to comply with Rule 8's basic injunction that, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." It is well settled that, "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon Cnty., 219 F. App'x 221, 222 (3d Cir. 2007). However, Rule 8 dismissals are governed by exacting standards and dismissal of a complaint under Rule 8 is typically only proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]," Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011), or when the complaint is so

11

"rambling and unclear" as to defy response. Tillio v. Spiess, 441 F.App'x 109, 110 (3d Cir. 2011). Similarly, dismissal may be appropriate in "'those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Id. (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995)); Tillio v. Northland Grp. Inc., 456 F. App'x 78, 79 (3d Cir. 2012). Further, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010).

Applying these legal benchmarks, we conclude that, while Green's complaint is not a model of clarity, given the liberal standards we must apply to *pro se* pleadings, wholesale dismissal of this complaint would not be appropriate. Fairly construed, the complaint alleges a pattern of sexual harassment in the workplace spanning from 2015 through the date of Green's termination, which appears to have been sometime in 2016. While further details regarding the timing and statutory basis of this claim would be helpful, to the extent that the defendant believes that a more definite statement of the legal and factual underpinnings of this claim would be useful, we submit that the most appropriate course would be filing a motion for more definite statement pursuant to Rule 12(e).

Sanofi has also moved to dismiss this complaint as time-barred. However, we find there is a factual dispute as to the date of receipt of the Dismissal and Notice of

Rights from the EEOC. As to this dispute the parties positions are irreconcilable, and the current, incomplete record does not allow us to reach any definitive conclusions regarding the timeliness of this complaint. This requires the parties to provide the court more information to determine whether the plaintiff has timely filed her complaint. Accordingly, the motion to dismiss should be denied without prejudice to the parties litigating this issue once more information has been obtained through targeted discovery.

The defendant argues that the plaintiff's complaint should be dismissed because she failed to file her complaint within 90 days of receipt of the EEOC Dismissal and Notice of Rights. On this score, it is well settled that in order to maintain a claim for relief in federal court under Title VII, a plaintiff must file a complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149, 104 S. Ct. 1723, 80 L.Ed.2d 196 (1984); Burgh v. Borough City Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). The 90-day period set by Title VII generally begins to run on the date "the complainant receives the right-to-sue letter." Id. (citations omitted). This 90-day filing period operates as a statute of limitations in Title VII cases and is not subject to extension, except where equitable considerations are found to apply. Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986); see also Burgh, 251 F.3d at 470 ("[I]n the absence

13

of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed.") Further, "Title VII claims must be the subject of a charge filed with the EEOC within either 180 days or 300 days of the complained-of unlawful employment practice, depending upon whether the state has an anti-discrimination law. See Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir.1992).

Yet while the law is clear on this score, the facts are not. The parties have submitted conflicting accounts of exactly when the plaintiff received her Dismissal and Notice of Rights from the EEOC, making it impossible for this court to determine at this stage exactly when the statute of limitations began to run. The defendant alleges in its memorandum supporting its motion to dismiss that the EEOC dismissed her charge on November 13, 2019 and has attached an exhibit of the Dismissal and Notice of Rights indicating that date. (Doc. 13-3, at 3). The plaintiff, in her brief in opposition, argues that she does not recall receiving a dismissal letter from the EEOC dated November 13, 2019, instead asserting she received a dismissal letter from the EEOC dated July 21, 2021. In a subsequent filing, the plaintiff attached said Dismissal and Notice of Rights indicating the later date, (Doc. 18-1), although it states a different Charge Number than that on the letter attached to the defendant's memorandum and does not name the parties to the suit.

For its part, Sanofi cast grave doubt over the provenance and legal significance of Green's submission. Sanofi notes that the EEOC case number on the document tendered by Green does not match the EEOC case number on the records it received from that agency. Sanofi also points out that the case number on Green's tendered document indicates that this record related to a 2019 EEOC filing and contends that if Green filed with the EEOC in 2019 regarding events which allegedly occurred in 2015 and 2016 her agency submission would be untimely.

These are substantial arguments that cast grave doubt over the timeliness of Green's case, but at this juncture we are presented with more questions than answers regarding the timing of these various agency actions. Moreover, we are being invited to foray far beyond the pleadings in order to determine this issue. Mindful of the fact that the bar of the statute of limitations may completely defeat this claim if it is accepted by the court, we believe that the resolution of this issue should await a motion for summary judgment and a more fulsome development of the record. See Marshall v. FedEx Ground Package Sys., Inc., No. 3:09-CV-2531, 2011 WL 13349323, at *6 (M.D. Pa. June 21, 2011), report and recommendation adopted sub nom. Marshall v. Fed Ex Ground Package Sys., Inc., No. 3:09-CV-2531, 2011 WL 13349402 (M.D. Pa. July 19, 2011). As the pleadings and attached documents currently available to the court do not make clear what should be a relatively straightforward determination of when exactly the plaintiff's cause of action

accrued, we cannot decide the statute of limitations question at this juncture. Accordingly, the motion to dismiss shall be denied without prejudice to further pleadings on this matter once the parties have clarified the issue. The parties are instructed to conduct targeted discovery and provide an explanation of the date discrepancies between the two Dismissal and Notice of Rights documents submitted (Doc. 13-3 and Doc. 18-1) and provide a more clear view as to when the plaintiff received notice of her right to sue from the EEOC.[1] The parties may then address this issue, as well as any other legal defenses raised by Sanofi, through a motion for summary judgment.

### III.   Conclusion

Accordingly, for the foregoing reasons, the defendant's motion to dismiss (Doc. 12) is DENIED without prejudice to renewal following targeted discovery concerning the issue of when a Dismissal and Notice of Rights was issued in this case.

---

[1] While the parties should, of course, conduct the targeted discovery they deem necessary, at a minimum, it would be helpful to have the parties produce and exchange all records relating to the two numbered EEOC complaints that are in their possession, custody and control. Additionally, a subpoena duces tecum to this agency could cast great light on the relevance and provenance of these competing forms.

Submitted this 4th day of January 2022.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
