IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INGRID GREEN,** | : | **Civil No. 3:21-CV-01462** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SANOFI PASTEUR INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case underscores the importance in life, and litigation, of being both timely and complete, in that we are called upon to consider whether Ingrid Green, the *pro se* plaintiff, has timely filed her workplace discrimination complaint in accordance with the statutory mandates of Title VII when it is undisputed that her complaint was first filed nearly six years after the alleged acts of discrimination set forth in this pleading.

In this setting Title VII sets two different time limitations on plaintiffs. Initially, "[t]o pursue an employment discrimination claim under Title VII ..., an employee must first file a charge with the EEOC within 300 days of an adverse employment action or of notification to the employee of such an action." Lebofsky v. City of Philadelphia, 394 F. App'x 935, 938 (3d Cir.2010). In addition, it is well-

1

settled that in order to maintain a claim for relief in federal court under Title VII, a plaintiff must file a complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Given these limitations periods set by statute, for the reasons discussed below, we conclude that Green's complaint, which was filed years after the events alleged in that pleading, is untimely and must be dismissed.

Pending before the Court is a motion for summary judgment, (Doc. 33), filed by the defendant, Sanofi Pasteur, Inc. ("Sanofi"), a leading manufacturer of vaccines, including the seasonal flu vaccine. (Doc. 32-1, at 58). The plaintiff, Ingrid Green, was a seasonal employee who worked briefly for Sanofi in the Summer of 2015. Preparation of the seasonal flu vaccine requires additional staffing during the spring and summer, so, during that time, Sanofi hires seasonal employees pursuant to a Service Provider Agreement with ManpowerGroup US, Inc. ("Manpower"). (Id., ¶¶ 3-4). Sanofi hires approximately 600 employees during its flu vaccine production season but reduces its staff to approximately 25 employees when vaccine production slows down, typically by August or September. (Id., ¶¶ 5-6). According to the complaint, Ingrid Green ("Green") was hired by Sanofi through Manpower during their flu vaccine production season as a Flu/Harvest Production Associate on approximately April 20, 2015, (Doc. 1, at 3), and worked from May

2015 to August 2015. (Doc. 32, ¶¶ 6-8).  Thus, the complaint in this case entails what were six year old claims of workplace discrimination.

Ms. Green filed a *pro se* complaint in the United States District Court for the Middle District of Pennsylvania on August 25, 2021, alleging that she was sexually harassed and subjected to a hostile work environment under Title VII during her time working at Sanofi in the summer of 2015. (Doc. 1). Although the complaint is not a model of clarity, liberally construed, Ms. Green alleges that she was physically and sexually assaulted, bullied, and subjected to physical and verbal misconduct, leading to a decline in her mental health. Ms. Green is requesting $100,000 for pain and suffering and requests that the alleged harassers be fired from Sanofi.

The defendant filed a Motion to Dismiss on October 22, 2021, (Doc. 12), seeking dismissal of the complaint on two grounds: first, that the complaint is not a "short and plain" statement and thus did not comply with Federal Rule of Civil Procedure 8; and second, that the complaint is time-barred because it was not filed within the 90-day limitations period prescribed by the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. 12). In response, Green argued that her complaint was timely, and tendered an EEOC Dismissal and Notice of Rights form dated July 21, 2021, (Doc. 18-1), which she asserted was the notice she received from the EEOC regarding the resolution of her complaint. (Doc. 18). Notably, this form differed materially from the EEOC Dismissal and Notice of

Rights form that Sanofi had received from that agency. In light of the parties'
submissions of two different EEOC Dismissal and Notice of Rights forms, each
purporting to be the genuine form in the case, we denied the motion to dismiss but
directed the parties to engage in targeted discovery on the issue, and to present this
question on a more fulsome record through a motion for summary judgment. (Doc.
21, at 5).

The parties have concluded discovery and we now consider the defendant's
motion for summary judgment. (Doc. 31). After reviewing the record taken as a
whole, we conclude for the reasons set forth below that no triable issue of fact exists
as to Green's untimely filing of charges with the EEOC. Having concluded that the
defendant is entitled to summary judgment on the plaintiff's federal claims based
upon Green's failure to timely file this lawsuit, we decline to exercise supplemental
jurisdiction over the plaintiff's state law claims and dismiss her Pennsylvania
Human Rights Commission ("PHRC") claims without prejudice to the plaintiff
bringing them in state court.

Accordingly, Sanofi's motion for summary judgment is granted.

## II.   **Factual Background and Procedural History.**

According to Ms. Green's complaint, she was first harassed in the Spring of
2015 when she was taunted during her training for being hard of hearing, despite her
informing both Manpower and Sanofi that she wore hearing aids. (Doc. 1, at 3). Ms.

4

Green then allegedly endured multiple incidents of physical assault by a co-worker, Demetri; sexual harassment by two other employees, Robert and Chad; and a pattern of sexual harassment and assault by her supervisor, Evan. (Doc. 1, at 3-6). The plaintiff further alleges that she was placed at a worksite primarily with men. (Doc. 1, at 3). Finally, Green avers that Demetri criticized her performance and pushed her knee into a pipe with a chair after she implored him to stop speaking to her in a threatening manner. (Id.) The plaintiff reported the incident to Evan, her supervisor, who allegedly conversed with Demetri about it a few days later. (Id.) Nonetheless, Demetri quit his job at Sanofi that same week. (Id.)

Green further claims that another employee, Chad, had expressed romantic interest in her on numerous occasions despite the plaintiff telling him that she was not interested in him. (Doc. 1, at 3). After Ms. Green rejected Chad's sexual advances, he allegedly began to bully her, kick her, and physically threaten her. (Id., at 4). Additionally, yet another employee, Robert, is alleged to have made unwanted, explicitly sexual comments to the plaintiff, including one where he stated that he could "use his fingers to satisfy [her]" and that he could "get [her] in bed." (Doc. 1, at 4). Furthermore, Ms. Green avers that Robert touched her breasts without her consent, and that he became physically abusive towards her after she condemned his actions. (Id.) According to Green, Robert allegedly pushed her in the back and grabbed her by the arm on two separate occasions. (Id.) Ms. Green claims that these

incidents were reported to her supervisor, Evan, who then spoke with Robert about his conduct. (Id.)

The plaintiff claims she consistently reported the harassment incidents to Evan, her supervisor, but that Evan also behaved inappropriately towards her. Green's complaint details ongoing conduct by Evan, including him repeatedly touching her arms and legs, staring at her up and down, stating "what he could do for [her]" while touching her back, touching her breasts, asking to massage her, putting his arms around her waist, and tickling her. (Doc. 1, at 4-5). Additionally, Ms. Green avers that Evan asked her to meet him at a hotel and, after she rejected him, became angry and treated her disrespectfully at work. (Id., at 5). The plaintiff claims that, despite expressly condemning Evan's actions by ordering him to stop, he did not. (Id.)

In addition to the sexual harassment claims, Ms. Green also recounts a series of other incidents from her time at Sanofi. The plaintiff alleges that she was intentionally exposed to a toxic mix of cleaning chemicals by her co-worker, Lonnie, that caused her to faint, that her glasses were hidden in a locker and damaged by heat, and that other men from other departments sat directly in front of her and "talk[ed] about sucking penis." (Doc. 1, at 6). The manner in which Green's tenure at  Sanofi ended is unclear; however, it appears that either Green was laid off or her seasonal position simply ended.

6

On June 16, 2016, Green filed a complaint with the PHRC and the EEOC against Sanofi alleging that she was sexually harassed during her assignment in the Summer of 2015. (Doc. 13-1). The PHRC dismissed the charges on August 16, 2019 (Doc. 13-2), and on November 13, 2019, the EEOC adopted the PHRC's determination and issued a Dismissal and Notice of Rights. (Doc. 13-3). This notice was mailed out to the parties in a timely fashion as evidenced by Sanofi's receipt of the notice.

Nearly two years then elapsed before Green filed the instant *pro se* complaint on August 25, 2021. (Doc. 1). The complaint, liberally construed, alleges a cause of action for sexual harassment and hostile work environment under Title VII. (Id.) In response, Sanofi filed a Motion to Dismiss on October 21, 2021, alleging that the plaintiff failed to comply with Federal Rule of Civil Procedure 8, and that the complaint was time-barred because it was filed well beyond the 90-day limitations period prescribed by Title VII. (Doc. 12). The plaintiff responded to the statute of limitations issue by tendering a different document which purported to be an EEOC Dismissal and Notice of Rights form that was dated July 21, 2021 (Doc. 18-1). Moreover, Green asserted that it was the notice she received from the EEOC, and that, given the dismissal date on the document she provided, her complaint had been timely filed. Presented with this enigmatic and murky factual backdrop where the parties tendered two different documents, each purporting to be the pertinent EEOC

7

notice in this case, we declined to grant Sanofi's motion to dismiss. In denying the defendant's motion to dismiss, however, we instructed both parties to conduct targeted discovery and provide an explanation of the date discrepancies between the two Dismissal and Notice of Rights documents submitted, (Doc. 13-3 and Doc. 18-1), and to provider a clearer view as to when the plaintiff received notice of her right to sue from the EEOC.

The parties' previous submissions of two different EEOC Dismissal and Notice of Rights forms, each of which purported to be the genuine form in this case, raised a series of questions regarding the application of the statute of limitations in this lawsuit. Consequently, we found that a question regarding the date on which the plaintiff received the Dismissal and Notice of Rights existed. Additional evidence has now been submitted regarding the timing issue of Ms. Green's complaint. Accordingly, Sanofi's motion for summary judgment has been fully briefed and is ripe for disposition. (Docs. 31, 33, 34, 35). This evidence clearly indicates that Ms. Green has, perhaps inadvertently, conflated the outcomes of two different EEOC complaints in order to attempt to evade the Scylla of Title VII's 90-day district court filing requirement and the Charybdis of the statute's 300-day submission deadline of a grievance to the EEOC.

After considering the evidence in the light most favorable to the plaintiff, we conclude that Sanofi shown an absence of genuine dispute of material facts by

providing documentation of the charges and dismissals on part of the EEOC and PHRA. (Docs. 31, 33, 34, 35). These documents establish that Green's filing is untimely regardless of how one might construe her various agency submissions. Conversely, we conclude that Green has failed to make a showing sufficient to establish a colorable pathway which would permit us to conclude that this complaint, which was filed nearly six years after the events giving rise to the lawsuit, was timely and has only offered merely conclusory evidence in her brief in opposition of the defendant's motion for summary judgment. (Id.)

Therefore, for the reasons described below, we conclude that no genuine factual dispute exists regarding the date of receipt of the Dismissal and Notice of Rights from the EEOC and the untimeliness of Green's complaint. Accordingly, Sanofi's motion for summary judgment is granted and the plaintiff's claims are dismissed pursuant to Federal Rule of Civil Procedure 56.

### III.   **Discussion**

#### A. **Motion for Summary Judgment – Standard of Review**

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that

do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also

appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is

11

also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985) (citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against these legal benchmarks that we assess the instant motion for summary judgment.

### B. **The Plaintiff's Claims Against Sanofi are Untimely.**[1]

The defendant has moved for summary judgment, alleging that the plaintiff's claims are time-barred and must be dismissed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (Doc. 33). On this score, a plaintiff must "file a charge of discrimination with the EEOC and procure a notice of the right to sue" when

---

[1] To the extent that Green endeavors to bring discrimination claims against Manpower, a temp agency which is not a defendant in this case, those claims are time-barred as a matter of law. In deferral states, such as Pennsylvania, a claimant who initially files a complaint with a state or local agency may file a charge with the EEOC up to 300 days after the alleged act has occurred. Dubose v. Dist. 1199C, Nat. Union of Hosp. & Health Care Emps., 105 F. Supp. 2d 403, 410 (E.D. Pa. 2000). However, despite the fact that Green's complaint is devoid of any dates on which the alleged acts occurred, (Doc. 1), we can infer that even if the alleged incidents occurred on the last day of her employment in August 2015, the complaint filed in August 2021 is nonetheless untimely because it has well exceeded the 300-day extended statute of limitations.

bringing a claim under Title VII. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (quoting Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir. 1997). A plaintiff seeking to bring the same claim with the PHRC is required to follow those same steps. Mandel, 706 F.3d at 163 (citing Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir.2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.")

Under Title VII, a plaintiff must file a discrimination claim within 90 days after receiving the dismissal of the charge. 42 U.S.C. § 2000e-5(f)(1). Burgh v. Borough City Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). Unless there is an equitable basis for tolling the limitations period, a civil suit filed "even one day late is time-barred and may be dismissed." Id. Moreover, under the PHRC, a timely charge must be filed within two years "after the date of notice from the Commission closing the complaint." 43 Pa. Const. Stat. § 962(c)(2).

In the instant case, Green dual-filed an administrative charge of sex discrimination against Sanofi with the PHRC and EEOC on January 14, 2016. (Doc. 32-1, at 11). She amended the Sanofi charge on March 4, 2019, to add a retaliation claim in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Rights Act ("PHRA"). (Id., at 17). The PHRC dismissed the plaintiff's charge with a no probable cause finding August 16, 2019. (Id., at 24). Subsequently, the EEOC adopted the PHRC's findings and issued a Dismissal and Notice of Rights

on November 13, 2019. (Id., at 27). Nearly twenty-one months later, Green filed a complaint against Sanofi on August 25, 2021. (Doc. 1).

In light of the dates that both the PHRC and EEOC dismissals were issued, Green waited until August 25, 2021, approximately two years later, to file a complaint relating to her assignment at Sanofi back in 2015. (Doc. 1). Green posits that she did not receive an EEOC dismissal letter dated November 13, 2019, however, and that in any event, her complaint was filed within the 300-day statute of limitations prescribed by the EEOC. (Doc. 16, at 1). In support of her argument, the plaintiff further avers that the only document she received was EEOC's Notice of Right to Sue letter, which was issued on July 21, 2021. (Doc. 34).

This July 2021 Right to Sue letter has been enigmatic for two reasons: first, there were no respondents named in the document; and second, the charge number printed on the notice (No. 17F-2019-60246) did not match the EEOC's record of either the Sanofi Charge (No. 17F-2016-60966) or the Manpower Charge (No. 17F-2019-60241). (Doc. 32-1, at 47). To resolve the apparent discrepancy, we instructed the parties to conduct targeted discovery to determine whether the July 2021 Right to Sue letter was linked to the Sanofi charge, and if so, whether Green's complaint was timely based on the date of her receipt of the document. (Doc. 22). If it is found that the letter was tied to Green's charges against Sanofi, then her Title VII claim would have been timely; if the July 2021 dismissal letter was found to be linked to

the claims against Manpower, then the plaintiff's argument on the timeliness issue would be meritless because the claims against Manpower are not presently before us.

Following our order to conduct targeted discovery, Sanofi proffered evidence of communication between itself and EEOC, (Doc. 32-1, at 42), along with a PHRC case file displaying the 2019 complaint against Manpower. (Doc. 32-1, at 50). In response to the defendant's inquiry about whether the EEOC charge number on the July 2021 Right to Sue letter was linked to either Manpower or Sanofi, (Doc. 32-1, at 42), the EEOC was unable to confirm or deny the existence of the Manpower Charge because Sanofi was listed as a third party. (Id.) However, in response to the defendant's request for information, the PHRC produced a case file that shows a complaint against Manpower that was filed in 2019. (Doc. 32-1, at 50). Additionally, the PHRC's case file for the July 2021 Right to Sue letter (No. 17F-2019-60246) also shows that the PHRC would occasionally reference this charge as EEOC Charge Number 17F-2019-60241, which directly corresponds to the Manpower charge number.  (Doc. 32-1, at 52).

Even when we consider this evidence in the light most favorable to the plaintiff, we cannot conclude that the July 2021 dismissal letter related to the charges brought against Sanofi. Quite the contrary, it is clear that the EEOC resolved Green's administrative complaint against Sanofi in November of 2019. Thus, the plaintiff's

argument that her complaint was timely filed based on the July 2021 Right to Sue letter is without merit because Green has apparently conflated the outcome of two different administrative proceedings, and the dismissal letter relied upon by Green seems to have been correlated with the charges against Manpower, who is not a defendant in this case.

Nonetheless, Sanofi postulates that even if yet a third yet unidentified administrative charge existed which had been filed in 2019, and even if Sanofi was the respondent for that charge, Green's claims would still be untimely for conduct that allegedly occurred years earlier during the plaintiff's assignment in 2015 based on the 2019 EEOC charge number set forth on the July 2021 Right to Sue notice. (Doc. 32, ¶ 27). We agree. Indeed, any administrative charge dated in 2019 would have been well beyond the 300-day statute of limitations that would have begun running in August 2015, which, given that her employment ostensibly terminated during that month, is the latest date that Sanofi could have been subjected to any alleged discriminatory action against Ms. Green. Therefore, we accept the defendant's argument that even if Sanofi was, in fact, the named respondent in some 2019 administrative charge, any 2019 charges underlying the July 2021 Right to Sue were untimely.

Simply put, we cannot conclude that Green filed a timely Title VII complaint in 2021 when the EEOC issued its dismissal of charges against Sanofi in November

2019. Moreover, given that the events alleged in this case took place in 2015, the enigmatic 2021 EEOC Notice relating to some 2019 filing by Green would also be untimely as that 2019 filing fell well beyond the 300-day deadline for filing an administrative charge with the EEOC following alleged acts of discrimination. Therefore, by all measures, Green's federal discrimination claims against Sanofi are time-barred and should be dismissed.

As to the plaintiff's state law claims, the statute of limitations generally begins to run on "the date on which the [right-to-sue] letter is received by the complainant." Peppler v. Kindred Hosp.--Pittsburgh--N. Shore LLC, 2015 WL 128105, at *1 (W.D. Pa. Jan. 8, 2015) (quoting N'Jai v. Floyd, 2009 WL 1531594, at *30 (W.D. Pa. May 29, 2009) (holding that a plaintiff's claim was not untimely where evidence was lacking as to the date the plaintiff received the PHRC's notice of dismissal). See also Paytas v. Kindred Hosp.-Pittsburgh-N. Shore, LLC, 2014 WL 1683276, at *2 (W.D. Pa. Apr. 29, 2014) (concluding that a plaintiff's PHRC complaint was not time-barred when it was filed two years and one day after the right-to-sue letter was issued). Although the record shows that the defendant received notice of the PHRC dismissal letter on August 23, 2019, (Doc. 32-1, p. 24), the date of the plaintiff's receipt is uncertain. As we previously mentioned, Green filed her complaint on August 25, 2021, two years and two days after the defendant received the PHRC's dismissal letter. However, given the uncertainty of the date of receipt, in this case

18

where the fate of this *pro se* plaintiff's complaint hinges on a mere two days, we find that the timeliness of Green's PHRC claims is a matter best left to the state court.

On this score, the proposed disposition of the plaintiff's federal legal claims against the defendant suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains").

As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

Here, we have found that Green's federal claims against Sanofi are subject to dismissal. Therefore, in the exercise of discretion in this district, we decline to assert supplemental jurisdiction over potential ancillary state law claims in this case where the federal claim brought before us failed as a matter of law. Accordingly, the PHRC claim against Sanofi is dismissed without prejudice for the plaintiff to file in state court.

While we acknowledge the gravity of the plaintiff's allegations, we also recognize that Green's failure to timely pursue these allegations has legal consequences. We are constrained by the stringent exhaustion standards laid out by the governing federal statute and conclude that the defendant is entitled to judgment as a matter of law. As to the federal claims, the Title VII claims are time-barred and are dismissed with prejudice. To the extent that the plaintiff brings state claims against Sanofi, we decline to exercise supplemental jurisdiction over the matter and thus dismiss Green's PHRC claims without prejudice to her filing in state court. Accordingly, Sanofi's motion for summary judgment is granted.

IV.   **Conclusion**

Accordingly, for the foregoing reasons, upon consideration of this motion for summary judgment, IT IS ORDERED that the defendant's motion for summary judgment (Doc. 33) be GRANTED.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: July 14, 2022

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INGRID GREEN,** | : | **Civil No. 3:21-CV-01462** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SANOFI PASTEUR INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

AND NOW this 14th day of July 2022, for the reasons set forth in the accompanying Memorandum Opinion, upon consideration of this motion for summary judgment, IT IS ORDERED that the defendant's motion for summary judgment (Doc. 33) be GRANTED and the clerk is directed to CLOSE this file.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge